IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **ANTHONY SHORT** | * | |
| | * | |
| **Plaintiff,** | * | **Case No. 14-312** |
| | * | |
| vs. | * | |
| | * | **JURY TRIAL DEMANDED** |
| **RESIDENTIAL CREDIT SOLUTIONS,** | * | |
| **INC.,** | * | |
| | * | |
| **Defendant.** | * | |

## COMPLAINT

**NOW COMES** Plaintiff Anthony Short and as his Complaint against Residential Credit Solutions, Inc. ("RCS") avers as follows:

## PRELIMINARY STATEMENT

This action arises from RCS' servicing of Plaintiff's home mortgage loan. Specifically, RCS has demanded payment of unlawful and unauthorized fees, has failed to properly credit Plaintiff's mortgage payments and has failed to comply with federal law by failing to investigate and correct its servicing error. Plaintiff seeks damages and attorneys fees for multiple violations of the Fair Debt Collections Practices Act, 15 U.S.C. 1692, the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601 *et seq.* ("RESPA") and the Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.* ("TILA").

## JURISDICTION AND VENUE

1.  This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question), 15 U.S.C. § 1640, 15 U.S.C. 1692k and 12 U.S.C. § 2617.

2.      Venue is proper here because the events giving rise to Plaintiff's cause of action occurred in this district.

## THE PARTIES

3.      Plaintiff is an adult resident of Mobile County, Alabama.

4.      Defendant, Residential Credit Solutions, Inc. ("RCS") is a corporation formed outside the State of Alabama, with its principal place of business in Texas.

## FACTUAL ALLEGATIONS

5.      Anthony Short is a retired ship captain. He and his wife Jeanne live at 13943 Hemley Street in Bayou La Batre. The Shorts have lived there for about 15 years.

6.      In December 2007 the Shorts refinanced their existing mortgage with a mortgage through Magnolia Mortgage Company, LLC, located in Mobile. The amount of the loan is $55,880.00 and it was financed with a fixed rate of 7 percent for a 15-year term. Monthly principal and interest payments are $502.27.

7.      Although the Shorts went to a local broker to get their loan, it was transferred by the lender to Amtrust Bank out of New York. This happened just a few months after the loan was originated. Amtrust, now defunct, was a mortgage servicing operation or arm of New York Community Bank.

8.      In February 2009, the Shorts filed a Chapter 13 bankruptcy. At that point Amtrust was still servicing the loan. Amtrust had claimed that the Shorts were two months behind on their mortgage payments. Although they questioned Amtrust's accounting, the Shorts agreed to include that alleged arrearage ($1,0054.54) in their bankruptcy plan.

9. Amtrust was closed by the FDIC in December 2009. The Shorts' loan was then transferred again to Saxon Mortgage Services Inc. ("Saxon"). At that time, Saxon was a large mortgage servicer operating out of Fort Worth, Texas. It was owned by Morgan Stanley. Saxon is now defunct.

10. In May 2012 servicing of the Short's loan transferred again, this time to defendant Residential Credit Solutions, Inc. ("RCS"), operating out of Fort Worth, Texas. In the meantime, the Shorts continued to make their regular monthly mortgage payments and required payments to the trustee, including the payments owed for mortgage arrearage that was placed into the plan.

11. On March 15, 2013, the Short's have satisfied all of their Chapter 13 and their bankruptcy was discharged. This was nearly years ahead of the scheduled Plan.

12. On March 26, 2013, RCS through its bankruptcy attorney, certified to the bankruptcy Court that the Shorts had satisfied all of their pre-petition and post-petition obligations and owed no outstanding arrearage or fees to the mortgage company.

13. The Shorts continued making regular monthly mortgage payments.

14. On January 10, 2014, RCS sent the Shorts a mortgage statement demanding payment of $2,929.81. No explanation was provided for the basis of this demand. Mr. Short immediately called RCS about the statement and was told that there existed $1,492.05 in "outstanding fees" and that he was behind on his mortgage payments.

15. Mr. Short was not behind in his payments. He had timely made each of the post-discharge payments.

3

16.     RCS has failed to properly apply Plaintiff's post-discharge payments. Its payment records also show that it has applied post-petition payments to pre-petition arrearage, even that arrearage was paid through the bankruptcy plan.

17.     Shortly after receiving the January 1, 2014 notice, Short contacted his bankruptcy attorney and she contacted RCS on his behalf. In response to her inquiry, RCS sent a letter dated February 7 explaining that Short owed $1,492.05 in "outstanding fees and advances," including attorneys fees, which date back prior to his discharge from bankruptcy.

18.     On February 20, 2014, Mr. Short sent RCS a letter explaining his belief that he did not owe any "outstanding fees" and that he was current in his mortgage payments. Mr. Short attached to his letter a copy of the March 26, 2013 acknowledgment signed by RCS' attorney certifying that no amounts were due RCS.  Here is the text of his letter.

> Please treat this letter as a **"qualified written request"** under Section 6(e) of the Real Estate Settlement Procedures Act, 12 U.S.C. 2605(e).
>
> I received a mortgage statement dated 1/10/14 stating I owed past due payments and fees in the amount of $2,929.81. I called RCS and I was told that I owed $1,492.05 in outstanding fees and I was one month behind in my ongoing mortgage payments. I dispute that this amount is owed and request my account be reviewed by RCS. First, I have made all monthly mortgage payments to RCS and should not be behind in my payments. I was discharged from a Chapter 13 bankruptcy case on March 15, 2013. I received the attached statement signed by RCS' attorney that was filed with the United States Bankruptcy Court that states that as of February 19, 2013, all post-petition amounts due to be paid directly to RCS were paid. I have copies of all subsequent mortgage payments remitted to RSC from that date forward. Please provide me with a payment history and provide the specific dates that RCS alleges that payments were missed.
>
> Second, I have reviewed the breakdown of the outstanding fee balance of $1,492.05. In particular I dispute the expense and corporate advances that total $1,290.00. The expense advances charged on 7/31/12 & 4/30/12 are not explained and I have no idea what they are for. The attorney fees charged to me on May 1, 2012, were not approved by the bankruptcy court and I have no idea what they were for. The attorney fees charged to me

4

on March 27, 2013, appear to be for the filing of the Statement filed with the Court on March 26, 2013, and this charge was not approved by the Court. I am requesting that these fees be removed from my account.

You should be advised that you must acknowledge receipt of this qualified written request within five (5) business days, pursuant to 12 U.S.C. Section 2605(e)(1)(A) as amended effective July 16, 2010, by the Dodd-Frank Financial Reform Act and Reg. X Section 3500.21(e)(1).

19. On March 13, 2014, RCS responded to Mr. Short's QWR, but refused to make any corrections to its accounting and continued to hold him responsible for these fees. RCS provided a more detailed breakdown of the fees which confirmed that all of the fees claimed, with one $50.00 exception, were incurred prior to Mr. Short's discharge and prior to RCS' certification that no amounts were owed by Mr. Short. RCS also provided a payment history which confirms that Mr. Short has made all of his post-petition payments and that they have been misapplied to pre-petition and pre-discharge arrearage which has been satisfied through the bankruptcy.

20. Any reasonable investigation of Short's dispute would reveal that RCS is improperly applying Short's payments, is demanding payment of unauthorized pre-discharge fees and had previously certified that no such fees were owed.

## COUNT I
## (FDCPA VIOLATIONS)

21. Plaintiff realleges and incorporates each of the preceding paragraphs as if fully set out herein.

22. This is a claim against Defendant RCS for multiple violations of the Fair Debt Collections Practices Act, 15 U.S.C. § 1692 (the "FDCPA").

23.     Defendant RCS is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6). RCS has attempted to collect a debt which is owed to another and/or it obtained the debt and servicing rights after default.

24.     The alleged debt which RCS attempted to collect from Plaintiff is a "debt" as defined by the FDCPA, 15 U.S.C. § 1692a(5).

25.     Defendant has violated the FDCPA in connection with its collection attempts against Plaintiff. Defendant's violations include, but are not limited to, the following:

   A.   Attempting to collect amounts which are not authorized by any contract or permitted by law. This is a violation of 15 U.S.C. § 1692f(1);

   B.   Attempting to collect a debt by use of false, deceptive and/or misleading statements aimed at coercing the Plaintiff to pay the debt in violation of 15 U.S.C. § 1692e; and

   C.   Communicating to any person, including credit bureaus, credit information which is known or which should be known to be false in violation of 15 U.S.C. § 1692e(8).

26.     The actions taken by RCS in violation of the FDCPA occurred within one year of the filing prior to this action.

27.     As a proximate result of RCS's FDCPA violations, Plaintiff has suffered actual damages.

28.     As a result of its violations of the FDCPA, Defendant is liable to Plaintiff for compensatory damages, statutory damages, costs and attorneys fee.

**WHEREFORE**, Plaintiff respectfully requests that judgment be entered against Defendant RCS for the following:

   A.   Actual damages;

   B.   Statutory damages pursuant to 15 U.S.C. 1692k;

   C.   Costs and reasonable attorneys fees pursuant to 15 U.S.C. § 1692k;

D.  Such other and further relief as this Court deems just and proper, the premises considered.

## COUNT II
## (RESPA VIOLATIONS)

29.  Plaintiff realleges and incorporates each of the preceding paragraphs as if fully set out herein.

30.  Section 6(d) of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e), grants borrowers the right to submit a "qualified written request" ("QWR") to the loan servicer requesting information and documents pertaining to the servicing of his loan. That provision also grants borrowers the right to submit a notice of servicing error ("NOE"), identifying perceived errors committed by the servicer. 12 U.S.C. § 2605(e).

31.  A QWR and NOE must sufficiently identify the borrower, the account and the perceived servicing error. Id.

32.  Recognizing the prevalence of servicing errors and the damage they can cause American families if not corrected, the federal Consumer Finance Protection Bureau recently exercised its authority under RESPA and clarified the borrower's rights to have errors corrected. 12 C.F.R. § 1024.35.

33.  Under Section 2605(e) and the implementing regulations ("Reg. X"), including the recent amendments thereto which servicers must take the following actions upon receipt of a QWR and/or NOE:

> -Provide a written acknowledgment of the correspondence within five days of the servicer's receipt of the QWR;
>
> -Within 30 days conduct a reasonable investigation of the errors identified in the borrower's notice and make all appropriate corrections to the account and provide a the borrower with written explanation of the corrections made, the effective date of the correction and contact information for further assistance;

7

>-If, after reasonable investigation, the servicer determines that no error was committed, it must, within 30 days of receipt of the notice, provide the borrower with a written explanation of reasons for its determination, a statement of the borrower's right to request documents relied on by the servicer in reaching its determination and contact information for further assistance; either the reason for the servicer's belief that the account is being serviced correctly or a description of the changes made; and

>-If a servicer determines that it is not required to comply with these requirements then it must, within five days after receipt, provide written notice to the borrower setting forth the reasons for such determination.

34. In addition to these requirements, RESPA was amended in 2010 to add additional "servicer prohibitions." 12 U.S.C. § 2605(k). Under these prohibitions, a servicer may not:

>-Obtain force-placed hazard insurance unless there is a reasonable basis to believe the borrower has failed to comply with the loan contract's requirements to maintain property insurance. 12 U.S.C. § 2605(k)(A);

>-Charge fees for responding to valid qualified written requests or notices of servicing errors. 12 U.S.C. § 2605(k)(B);

>-Fail to take timely action to respond to a borrower's notice of servicing error relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties. 12 U.S.C. § 2605(k)(C);

>-Fail to respond within 10 business days to a request from a borrower to provide the identity, address, and other relevant contact information about the owner or assignee of the loan. 12 U.S.C. § 2605(k)(D); or

>-Fail to comply with any other obligation imposed under the implementing regulations. 12 U.S.C. § 2605(k)(E)

12 U.S.C.A. § 2605(k)

35. Plaintiff's mortgage is a "federally related mortgage loan" within the meaning of 12 U.S.C. § 2602(1).

36. Plaintiff's February 20, 2014 letter and supporting documents constitute a "qualified written request" and a "notice of servicing error" within the meaning of 12 U.S.C. § 2605(e) and Reg X.

37. RCS has violated 12 U.S.C. § 2605(e) by failing to respond to Plaintiff's QWR and NOE as required under that section and Reg. X. Specifically, RCS failed to conduct any reasonable investigation of the errors described in Plaintiff's letter and continued to hold Plaintiff responsible for unauthorized and unlawful fees and other charges. RCS also failed to correct its payment records so that Plaintiff's payments were properly applied.

38. RCS has also violated 12 U.S.C. § 2605(k) in at least the following ways:

-Failing to take timely action to respond to Plaintiff's notice of servicing error; and

-Failing to comply with the requirements set out in Reg regarding responding to a QWR and a NOE.

**WHEREFORE**, Plaintiff requests that this Court enter a judgment against RCS for violation of the RESPA, awarding the following relief:

a. Statutory and actual damages as provided in 12 U.S.C. § 2605(f);

b. Reasonable attorney's fees, and costs expended in this proceeding; and

c. Such other and further relief as the Court may deem just and proper.

### COUNT III
### (VIOLATION OF TILA)

39. Plaintiff realleges and incorporates each of the preceding paragraphs as if fully set out herein.

40. This count asserts a claim under the Truth in Lending Act, 15 U.S.C. § 1600 - 1666 ("TILA")

41. RCS was required by 15 U.S.C. § 1639f to promptly and accurately credit the Plaintiff's account with the payments received. It has failed to do so.

9

42. Plaintiff has suffered damages as a result of RCS's TILA violation.

**WHEREFORE**, the Plaintiff having set forth his claims for relief against the Defendant respectfully prays of the Court enter judgment in Plaintiff's favor against RCS awarding the following relief:

a. Statutory and actual damages as provided by 15 U.S.C.A. § 1640(1)(2)(a)(iv).

b. Reasonable attorney's fees, and costs expended in this proceeding; and

c. Such other and further relief as the Court may deem just and proper.

**TRIAL BY JURY IS HEREBY REQUESTED AS TO ALL CLAIMS AND DEFENSES ASSERTED HEREIN**

_____
KENNETH J. RIEMER (RIEMK8712)
Underwood & Riemer, P.C.
One of the Attorneys for Plaintiff
166 Government Street, Suite 100
Mobile, Alabama 36602
251.432.9212
kjr@alaconsumerlaw.com

**DEFENDANT TO BE SERVED BY CERTIFIED MAIL AT THE FOLLOWING ADDRESS:**

RESIDENTIAL CREDIT SOLUTIONS, INC.
c/o CSC LAWYERS INCORPORATING SRV INC.
150 S Perry Street
Montgomery, Alabama 36104

10